CHARLES A. BUDDENSIEK

*v.*

FRANCES K. LIPMAN et al.

[Filed July 8th, 1899.]

Upon the facts as shown in this case—*Held,* that the evidence is insufficient to establish a trust in the defendants in respect to the lands in question.

On bill, &c. Heard on bill, answer, replication and proofs taken orally.

*Mr. Leslie Lupton* and *Mr. Phillips* (of the New York bar), for the complainant.

*Mr. Charles E. Hill* and *Mr. Ransom* (of the New York bar), for the defendants.

EMERY, V. C.

The defendants are the executors and devisees of Julius Lipman, deceased, who died in November, 1895, seized of lands at

Buddensiek v. Lipman.

Key East, in Monmouth county, adjoining Shark river. These lands comprised three tracts and the complainant was the owner of all these lands in 1885, and he now claims that the defend-ants hold all the lands in trust for him by virtue of transactions between himself and the deceased, set out in the bill. On August 11th, 1882, complainant gave a mortgage to Lipman upon one of the tracts to secure the payment of $6,000 on February 11th, 1883, with interest, from August 15th, 1882, according to the condition of a bond recited in the mortgage. On March 6th, 1883, complainant and his wife executed to Lipman another mortgage for $6,000, payable August 15th, 1883, with interest, from August 15th, 1882, upon the tract included in the first mortgage, and also upon another tract. Two years later and about May 8th, 1885, complainant and his wife executed to Lipman another mortgage bearing that date, upon the three tracts of land to secure the payment of $18,600, which was recorded May 13th, 1885. On June 1st, 1885, complainant and his wife executed a deed for the entire premises to one Jacob Cohen (father-in-law of Julius Lipman), by which, for an expressed consideration of $32,000, the premises were conveyed subject to mortgages of $29,975. The entire amount of the mortgages to complainant was $30,600, and there was also in addition upon the property a small balance due upon a prior mortgage held by one Bennett. This deed to Cohen was acknowledged on June 1st, 1895, and recorded on June 2d, 1895. Subsequent to this deed and on August 18th, 1885, Lipman filed a bill to foreclose the second mortgage of $6,000 on the first two tracts in the deed of June 1st. The only defendants to this foreclosure were Buddensiek and his wife and Butler and Constant, attachment creditors on an attachment issued April 23d, 1885, previous to the deed to Cohen. Service for the attaching creditors was acknowledged by the late Governor Green as solicitor, and personally by Buddensiek and his wife, whose signatures were proved by an affidavit of one Spitzer, then in Lipman's law office, and by an affidavit taken before one Patch, a notary public, who was also in Lipman's employ.

After decree *pro confesso* against all the defendants, final

decree in this suit was taken on the 20th of November, 1885, and on February 5th, 1886, the property included in this mortgage was sold to Julius Lipman for $2,000, and after confirmation of the sale a deed from the sheriff to Lipman was executed, dated March 6th, 1886, and recorded on March 31st, 1886. Subsequent to this foreclosure of the second mortgage, there was also a foreclosure of the third mortgage by Lipman. The proceedings in this foreclosure have not been put in evidence, and the only evidence relating to them is that derived from the sheriff's deed, for the premises which recites some of the proceedings in the foreclosure. This deed, which is dated on April 17th, 1891, and is made by the sheriff to one Simon Arendt, one of the defendants in this suit, recites a final decree in foreclosure as having been made on November 24th, 1886, in a suit in which Julius Lipman was the complainant, Buddensiek and his wife, Butler and Constant, and one Harry M. Bennett were defendants, and directing a sale to pay, in the first place, a balance of $203.13 due Bennett on a mortgage given to him February 28th, 1882, on the premises, and, in the second place, to pay Julius Lipman $20,295.70, the principal and interest on a mortgage of Buddensiek to Lipman, dated May 8th, 1885, with interest from November 15th, 1886. Execution was not issued on this decree until February 3d, 1891, and a sale was made on April 6th, 1891, when Arendt bid off the property for $1,000, and a deed was subsequently made to him. Simon Arendt and wife, by deed bearing date the day after the sale, and being April 7th, 1891, quit-claimed the premises to Julius Lipman for the expressed consideration of $1 and other good and valuable consideration. This deed was acknowledged June 16th, 1891, before Patch, the same notary public, but was not recorded until February 19th, 1895. On the same day, when Arendt conveyed to Lipman, Jacob Cohen and wife also executed to Lipman a deed dated April 7th, 1891, for $1 and other good and valuable consideration, for the lands and premises in question. This deed was acknowledged June 2d, 1891, before Patch, but was never recorded. Lipman, at the time of the execution of these mortgages and up to the time of his death, was engaged

in the practice of law in the city of New York, and Budden-siek was a client for whom he did legal business and for whom also, as appears by the evidence in the case, Lipman transacted other business in the way of assisting him to procure loans upon premises where he was erecting buildings, Buddensiek being a builder who carried on building operations on a large scale.

Complainant files his bill alleging that the $18,600 mortgage and the deed to Cohen were made without any consideration and under a written declaration of trust executed by Lipman to Buddensiek, by virtue of which the property, after being dis-posed of for the payment of Buddensiek's debts, admitted or to be ascertained, was to be held in trust for Buddensiek. Nothing is alleged in the bill in reference to the two prior mortgages. This declaration of trust (signed by Lipman and not by Cohen) is not produced. The evidence of its contents is that of a wit-ness, Mr. Jelliffe, a lawyer who is employed in Lipman's office, who drew it in 1885, at Lipman's direction, and after it was signed by Lipman took it to Buddensiek, then in confinement in a New York prison, and at his request returned it to Lipman for custody. The deed of trust, according to this witness, de-clared that Lipman was the holder of the property, and held it in trust to pay Buddensiek's debts sustained (*quœre* ascertained) by law, and after their payment to reconvey to Buddensiek or his heirs. The declaration of trust was not signed by Cohen, nor, according to the statement of the witness, was there any reference to the mortgage of $18,600 which was executed some weeks previous to the declaration of trust, nor was there any reference to either of the prior mortgages. No evidence has been offered by complainant in reference to the bonds and mort-gages sufficient to overcome the evidence of indebtedness created by the execution and delivery of the mortgages themselves, and in reference to the consideration of the $18,600 mortgage the defendants produce a statement signed and verified by Budden-siek, apparantly showing how the amount of this mortgage was made up, and they also produce his affidavit taken at the time that the entire amount was due.

22

Without stating the evidence in detail, I find upon the whole case that the defendants have, as against complainant, sufficiently shown title as mortgagees to the lands in question under the mortgages and the foreclosure proceedings thereunder.

In reference to relief against the deed I also find that although some facts appear in the case, which seem to indicate that the title in Cohen's name was controlled by Lipman and for his benefit as mortgagee, yet these circumstances are not sufficient, either alone or in connection with the other proofs, to establish the trust set up in the bill.

If the complainant's proofs had established a trust in the lands or their proceeds, over and above the amount due on the mortgages, he would only establish a right of redemption. And in view of these facts that the value of the land at the time of the foreclosure sale was less than the amount due, that Lipman since his purchase has expended over $10,000 in the improvement of the property, and that the value of the premises at the present time is shown to be less than the amount due on the mortgages at the time of the sale and the amount so expended, there is no reason for holding the bill as a bill to redeem, even if it had been framed in that view. And it should also be noted that the trust set up in the bill is a trust first to pay creditors of Buddensiek. The evidence shows that these creditors whose debts then existed have not been paid, but they are not parties to the bill, and the recovery on this bill is claimed for Buddensiek's personal benefit without paying or providing for the payment of these creditors. If a case of trust as alleged had been made out by complainant, either as to the real or personal property, it would have been a serious question whether relief could have been given in the absence of these creditors or without providing for their protection and payment. As to the personal property complainant's proofs also fail to make out a case, and I advise a dismissal of the bill, with costs.